United States District Court
For The Eastern District Of Virginia

E.D. Virginia, Alexandria Division



JAN 14 2016

CLERK U.S. DIST...
ALEXANDRIA, VIRGINIA

*Plaintiff:* Linda Wagner ) Case # 1:16-cv-00053
)
vs. ) *In Rem Proceeding.*
) ACPA (Cybersquatting), Extortion,
*Defendant:* Lindawagner.com (domain name) )
Current Registrant: Eweb Development Inc. )

## COMPLAINT (re-file)

Table of Contents:

Pg. 1:-------------------------------------------------- Authorities.

Pg. 2:-------------------------------------------------- Exhibits.

Pg. 3:--------------------------------------------------Jurisdiction

Pg. 4:-------------------------------------------------- Complaint.

Pg. 6:-------------------------------------------------- Argument.

Pg. 7:-------------------------------------------------- Relief Sought

----------------------------------------------------------------

AUTHORITIES:

*Anti-cybersquatting Consumer Protection Act (ACPA), 15 USC §1125(D) et al.*

*WITH EXPANDED ATTENTION TO: 15 USC §1125 (7)(d)(1)(A)(i)*

*LANHAM act [15 U.S.C. § 1125 (7) (d) (1)(b)]*

*NBC Universal vs. Junak Kwon (Eastern District, VA Cir. 2005)*

*Bosley Medical Institute v. Kremer, 2005 USAppLexis 5329 (9th Cir. 2005).*

*Ford Motor Co. v. Catalanotte,* 342 F3d 543 (6th Cir. 2003)

*Nissan Motor Co. v. Nissan Computer Corp., 61 USPQ2d 1839 (C.D. Cal. 2002)*

*Storey v. Cello Holdings, LLC., 347 F3d 370 (2d Cir. 2003)*

-----------------------------------------------------------------

Attached Exhibits:

(Exh. 1) Resondent advertising domain for "sale and development".

(Exh. 2) Example of what domain actually would have cost plaintiff.

(Exh. 3) Verisign details to establish jurisdiction with this Court.

(Exh. 4, 5, 6) Correspondence between plaintiff and respondent.

(Exh. 7)(a)(b) Receipts of Notice in Washington Times. (Oct 30th 2015)
(Should the court request this be done again please notify plaintiff)

(Exh. 8) (a) Notice sent to current Registrant (respondent) (Notice of intent to proceed *in rem*)
(b) Copy of internet image displaying respondent address on Registrar.
(c) Post office receipt of Notice sent to respondent.

(Exh. 9, 10) Copy Of plaintiff Real Estate license and showing date of acquire.

(Exh. 11) Godaddy Registrar record of Lindawagner.com being owned by plaintiff.

(Exh. 12) 2nd Notice to respondent (voided) pertaining to previous response to Motion to dismiss.

(Exh. 13 a – f) Correspondence email between plaintiff and respondent)

(Exh. 14 a - b) Cease and Desist "refused" receipt by respondent.

(Exh. 15 a – b) Letter from respondent's attorney claiming plaintiff complaint is meritless

-------------------------------------------------

JURISDICTION:

1. That this Court holds Jurisdiction over Rem proceedings under CPA, a type of action provided under

2. U.S.C. 1125(D)(2) which allows under certain circumstances, a plaintiff to directly proceed against a

3. domain name to enforce ownership rights in. [See NBC.Universal vs. Junak Kwon 2003], in which

4. the Court allowed NBC Universal to proceed in this manner because it would have been impossible

5. for the Court to exercise personal jurisdiction over the defendant in Korea. In this instance the

6. respondent is a Canadian entity. Further the domain in question is a "dot com" domain classed as

7. "TLD" (Top Level Domain) whom"VERISIGN INC.", located in Reston, VA. (Exh 3) is the

8. authoritative Registry for the "dot com" "dot net" and generic name domains. That this fact allows

9. for jurisdiction to lie with this Court. That it is not possible for the plaintiff to exercise personal

10. jurisdiction over respondent due to respondent being either a Canadian resident, citizen or entity.

11. "In rem" proceedings can commence in a judicial district "in which the domain name registrar,

12. domain name registry, or other domain name authority that registered or assigned the domain name

13. [at issue] is located." (ACPA), 15 USC§1125(d)(2)(c)). Lastly, *An "in rem" action can also be used*

14. *to address violations of 15 USC §1125(a) (infringement of unregistered mark).* The main focus

15. here, however, is cybersquatting and jurisdiction lies with this Court nevertheless because of

16. *Rem action* necessarily in this instance.

17. In "NBC vs. Kwon" the court rejected three arguments put forth by "Kwon" attempting to

18. disqualify this Court from jurisdiction, one of which pertains to the complaint herein. "Kwon"

19. argued that this Court lacks jurisdiction in "Rem" provisions under ACAP (15U.S.C. 1125(d)),

20. charging the provision is only for cybersquatting claims, (which is in part of the complaint herein),

21. He alleged that the Court therefore could not exercise personal jurisdiction. (in this instance

22. BOTH sides also agree that personal jurisdiction is not possible). The Court held, because

23. of the circumstances jurisdiction was in fact allowed under the "rem" provision. In this instance the

24. charges also goes further than cybersquatting and includes "dilution" as the plaintiff's name is

25. very well known in her home state and to date she has sold more than 300 homes. Her ongoing

26. strive is affected adversely by the "bad faith" conduct of respondent that caused the sprung of

27. "hindrance" to a good degree by preventing plaintiff her right to operate her trademark and birth

28. given name in a "good faith" fashion, by preventing her to continue using the domain in dispute

29. herein. Further, this Court also ruled, [that] *abstention by a federal court is only warranted in*

30. *extremely rare circumstances. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).*


COMPLAINT:

31. Now comes the plaintiff "Linda Wagner" in this case charging that respondent "EWEB

32. DEVELOPMENT INC." has committed a violation and is committing an ongoing violation

33. against her goodwill and economic strive. In short the violation is categorized specifically under

34. ACAP *15 USC §1125 (7)(d)(1)(A)(i)* charging that respondent is "cybersquatting" "holding for

35. ransom" and attempting to "extort" thousands of dollars from plaintiff pertaining to the domain

36. name "lindawagner.com". That said domain name is in fact the "birth given name" and common

37. law Trademark, of which plaintiff has been trading with since in and around (1985). That plaintiff

38. in fact OWNED this very domain from in and around (2003) to in and around late (2010) (Exh. 11).

39. That the record will show, (a) that plaintiff is an independent Real Estate Agent to which she

40. operates under her personal name "Linda Wagner" that reflects the domain name in question.

41. (b) That plaintiff failed to renew the domain after a severe plunge in the housing market to which

42. plaintiff suffered like many others financially which led to plaintiff neglecting briefly to renew

43. the domain disputed herein. (c) That plaintiff created a following with said domain for quite a

44. substantial number of years.(d) That shortly after plaintiff failed to renew said domain, respondent,

45. who is a resident entity from CANADA, acted in "bad faith" by purchasing the domain with the

46. sole intention to cybersquat and extort money from plaintiff by holding for ransom said domain.

47. (e) That respondent's birth name is not the plaintiff's name. (f) That respondent has never TRADED

48. nor used said domain as a website, but rather created a "splash page" that offers contact information

49. to "purchase and develop" said domain. (EXH.1), (f) That plaintiff, not knowing any better actually

50. offered respondent five hundred US dollars for said domain which would normally have cost

51. her around (2-12) dollars per year from a legitimate domain re-seller, such as "GODADDY.com"

52. (Exhibit 2), and that respondent turned plaintiff down flat on her five hundred dollar offer and

53. demanded instead five thousand U.S dollars. (g) That plaintiff "gave up" believing there was

54. "nothing she could do to get her domain back". That in early 2015 plaintiff further filed a

55. business license for her own brokerage start-up firm named "Linda Wagner Properties"

56. in the state of Tennessee, and again attempted to persuade respondent to sell her the domain in

57. question herein for less monies and again respondent refused instead demanding thousands of

58. dollars. (h)That the record will show that up to this point respondent has been sitting on

59. said domain all this time solely for the purpose to cybersquat and hold for ransom, and to extort

60. monies from plaintiff to what is rightfully hers. (i) That this is a "bad faith" course of conduct by

61. respondent and done so "willingly" "knowingly" with "bad faith" intent and without remorse.

62. (j)That plaintiff used both her birth name AND the domain name in question as her Trademark until

63. respondent recklessly interfered. (Exh. 11) (j) That even after respondent was made aware to the

64. importance of plaintiffs economic strive being affected in a severe adverse way due to his ongoing

65. conduct,respondent remains defiant, declaring that he "bought" said domain and thus makes him

66. the "legal owner", forcing plaintiff to plead with this Court for relief.

---

*Footnote: A "Splash page" is not a "website" but simply ONE webpage that has links to websites and is used commonly by squatters and domain hijackers for ulterior motives, such as extortion and such as in this case to hold for ransom.*

(5)

ARGUMENT:

67. A person's name, is a legitimate claim if the name is used as a Trademark. See *Nissan Motor*
68. *Co. v. Nissan Computer Corp.*, 61 USPQ2d 1839 (C.D. Cal. 2002), where the Company is named
69. after the person's actual name. In this case the plaintiff exercised the same right, using her name
70. as her Trademark being an independent Real Estate Agent. Respondent on the other hand, has
71. NOT used the name for anything other than what the charges are outlining in this complaint
72. (Exh 1.) where respondent falsely believes, he has a "legal right" to the domain simply because he
73. "bought it" SEE *Storey v. Cello Holdings, LLC.*, 347 F3d 370 (2d Cir. 2003), *(The right to use a*
74. *domain name is not fixed at the time of registration, "instead, it is contingent on [the] ongoing*
75. *legal use of that domain name."* In determining whether a particular domain name was registered
76. or used in good faith, the use made of the domain name prior to the commencement of the parties'
77. dispute is particularly important. Respondent has no relief in this (Exh 1.) Here, respondent has
78. demonstrated *(a) An offer to transfer the domain name to plaintiff for financial gain where the*
79. *domain has not been used by respondent in connection with a bona fide offering of goods or*
80. *services. (b)Respondent's intent to divert consumers from the plaintiffs mark to a site that harms*
81. *the good will represented by the mark, whether for commercial gain, or to tarnish or disparage*
82. *the mark.* Whereby plaintiff claims her mark to be famous locally, as one would expect when the
83. use was since, (1985) and respondent snatching the domain to the mark, KNOWING plaintiff or
84. other namesakes may want the domain desperately, and then in "bad faith" attempts monetarily
85. gain by the act of EXTORTION. SEE *Ford Motor Co. v. Catalanotte*, 342 F3d 543 (6th Cir. 2003).
86. Respondent claims he "never contacted" plaintiff in an attempt to "sell her" the domain name in
87. question before the court. This does NOT take away from the act as he created a "splash page"
88. with said domain whereby if anyone seeking the domain by typing it in a search engine would

(6)

89. land on the "splash page" (EXH. 1) whereby then respondent has to be contacted to get access to

90. the domain and then he demands thousands of dollars for it. In other words the "splash page" is

91. only intended to extort monies from those seeking the particular domain name. "Services offered"

92. is a seperate issue from legitimately owning a domain name. Respondent is acting as a "reseller"

93. of domain names yet is NOT a Registered "reseller" with ICANN, and even if he was, he is NOT

94. adhering to ICANN rules and regulations. He is simply put "acting unlawfully" by ways of

95. cybersquatting and extortion. **Apart from in their previous motion to dismiss, respondent also**

96. **claimed plaintiff agreed to an alleged "agreement" by clicking a button on respondents**

97. **website** (Exh. 15(b). This "button" HAD to be clicked in order for plaintiff to contact him to

98. "get a quote" on her domain name. This conduct and alleged "agreement" is highly UNLAWFUL

99. forcing inquirers to "agree" to it before they can "get a quote" of their domain names. This alleged

100. "agreement"calls for inquirers to set aside US. law stating they agree "to only pursue legal

101. action in respondent's native country" which is Canada. This alleged "agreement"

102. should be moot on it's face as plaintiff never signed anything nor intended to agree to any

103. alleged "agreement", but was "forced" to click a "button" to enable her to inquire about her

104. domain name being held for ransom. Respondent composed this alleged "agreement" precisely

105. because he knows he is a cybersquatter and therefore created an unlawful alleged "agreement" in

106. an UNLAWFUL attempt to escape anti-cybersquatting laws in the US. The court should use it's

own discretion on jurisdiction to punish such UNLAWFUL actions by an entity doing business in the United States.

RELIEF:

107. Plaintiff now is petitioning this Court to order the domain in dispute herein "lindawagner.com"

108. either be transferred to her without delay or to order the CANCELLATION of the registration of

109. respondent to the domain. This would allow plaintiff to re-register it in her name, and for her

110. ongoing use of "good faith". That plaintiff's history to the use of her trade name "Linda Wagner"

(7)

111. justify such action. That respondent be found as having NO legitimate grounds to hold

112. this domain for ransom in this "bad faith" scheme of Extortion. That respondent is displaying

113. particularly aggressive "bad faith" conduct attempting to extort thousands of dollars

114. from plaintiff, and has hold for ransom the domain for almost 5 years, suggesting "exceptional"

115. circumstances. That it is indeed a blemish on plaintiff'sr success and strive when clients

116. and referrals can not reach her through the domain in dispute herein. That a search of the domain

117. lands on a "splash page" of respondent attempting to sell it (Exh 1.), suggesting that plaintiff

118. is no longer operational, and that most likely subsequent searches to find her are not performed

119. because thereof. That she also used the domain in dispute herein as her common law Trademark

120. which is her birth given name, which in this instance, is one and the same name (mark), as the

121. TLD domain,with the exception of the added on "dot com". That even so plaintiff does not hold a

122. registration for her Trademark , the Court acknowledges protection of her Trademark and

123. personal name under Judicial common law and common law protection as well as the *LANHAM*

124. *act 15 U.S.C. § 1125 (7) (d) (1)(b)*, that provides therein. That further it shows to be obvious that

125. the domain disputed herein, is plaintiff's actual birth given name namely "Linda Wagner", which

126. she has so used since (1985) as an independent Real Estate Agent in the State of Tennessee.

127. That by contrast respondents name is NOT "Linda Wagner" thus he can lay no claim to this name

128. simply because he "bought it" and that him "purchasing it" shows "bad faith intent" in and by

129. itself, further evidence of him attempting to sell it to plaintiff for thousands of dollars when he has

130. NEVER used it in a "bona fide" "good faith" fashion since the day he aquired it.

131. That evidence will show, the ongoing conduct of cybersquatting, greed and complete dis-concern

132. by respondent, causing plaintiff's invested strive to be affected in an adverse fashion.

133. That this conduct denies plaintiff of her legal and moral rights and is express violation by

respondent.

134. The evidence is clear. Respondent wants thousands of dollars and is **NOT a certified ICANN**

135. **reseller for domains.** To find that respondent has NO RELIEF or claim to the intelectual

136. property and top level domain "lindawagner.com" (regardless of whether plaintiff does), however

137. in fact plaintiff does qualify for the relief sought herein because of the elements presented herein.

138. That the Court keep in mind this is a **TOP LEVEL domain** the respondent is cybersquatting on.

139. That this Top Level Domain is not merely "generic" words [see (*Nissan Motor Co. v. Nissan Computer Corp., 61 USPQ2d 1839 (C.D. Cal. 2002)*] but in fact a top level domain that mirrors the first and last birth given name of the plaintiff, whom has used it in "good faith" for seven years, before it was stolen by the respondent whom has no connection to the birthname of plaintiff, and has not used it "in good faith", in fact, not used it at all since he purchased it (5 years ago), other than attempting extortion through cybersquatting (EXH. 1).

140. Courts have long dictated that domain names are used as Trademarks in many instances thus

141. domain names be scrutinized under the same scrutiny and laws as Trademarks as well. Use it

142. or loose it. Therefore relief is utmost necessary in the interest of Justice under all applicable laws

143. dictating "Fair use", and "Good faith" use and intention in the market place of Trademarks and

144. Domain names under the statute.

So pleaded and entered this 12th day of October 2015.

By Plaintiff. (Pro Se Litigant)

Date    1-5-2014

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076

(9)

## Certificate Of Service

That I Linda Wagner (Plaintiff) has personally served a copy of this complaint and all amended documents thereto, including a NOTICE OF PROCEEDING *IN REM* **(Exh. 8 (a)(b)** directly to respondent, to reach respondent, by placing a sealed envelope with said content in the mail and mailing it by U.S Priority Mail to the recipient address below **as it appears on the REGISTRAR.**

Eweb Development Inc.
98052 – 1146 Pacific Blvd
Vancouver, BC V6Z 2Z7
Canada.

Date  1-5-2014

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076

## AFFIDAVIT TO TRUTH

I, Linda Wagner, hereby attest and swear under oath that all the foregoing statements regarding the Complaint herein, to be true and to the best of my understanding and ability, as I understood it at the time of admission of this complaint herein. That I truly believe my rights are being violated and my invested strive being affected in an adverse way.

That I understand the consequences of false and/ or misleading statements to this Court.

That I pray for relief with a clear conscience that I am acting in the interest of law and justice, by admitting the complaint herein to this Court so that faith can be restored in my invested strive .

So sworn and attested this _____5_____ day of January 2016 by my hand.

Date __1-5-2014__

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076