**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

LINDA L. WAGNER,

      Plaintiff,

v.

LINDAWAGNER.COM,
an Internet Domain Name,

      Defendant.

Case no. 1:16cv0053-LMB-IDD

## **OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (*for pro hac admission*)

WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

Counsel for Defendant LINDAWAGNER.COM

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iii

I.        PRELIMINARY STATEMENT .............................................................1

II.       RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS. ................................2

III.      PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT......................11

   A.     There is a Material Factual Dispute Regarding Plaintiff's Claimed Trademark
          Rights. ......................................................................................12

   B.     Plaintiff Cannot Establish That eWeb Development Acted With Bad Faith
          Intent to Profit From Her Mark.........................................................15

   C.     Plaintiff's Claim is Barred By the Statute of Limitations..................17

   D.     eWeb Development's Registration and Use of the LINDAWAGNER.COM
          Domain Name is Protected Under the ACPA Safe Harbor. ............................18

IV.       CONCLUSION....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*,
No, CV 10-03738 AB, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ...................................15

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*,
330 F.3d 617, 625 (4th Cir. 2003) ..........................................................................16, 17

*Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*,
89 F. Supp. 2d 464 (S.D.N.Y. 2000)........................................................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).............................................................................................11

*Ford Motor Co. v. Greatdomains.Com, Inc.*,
177 F. Supp. 2d 635 (E.D. Mich. 2001)....................................................................15

*International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*,
192 F. Supp. 2d 467 (E.D. Va. 2002) ......................................................................18

*Jones v. R.R. Donnelley & Sons Co.*,
541 U.S. 369 (2004)............................................................................................17

*Lamparello v. Falwell*,
360 F. Supp. 2d 768 (E.D. Va. 2004) ......................................................................18

*In re Oppedahl & Larson LLP*,
373 F.3d 1171 (Fed. Cir. 2004)..............................................................................15

*Peaceable Planet, Inc. v. Ty, Inc.*,
362 F.3d 986 (7th Cir.2004) .................................................................................13

*Rossignol v. Voorhaar*,
316 F.3d 516 (4th Cir. 2003) ................................................................................11

*Schreiber v. Dunabin*,
938 F. Supp. 2d 587 (E.D. Va. 2013) ......................................................................12

*Tana v. Dantanna's*,
611 F.3d 767 (11th Cir. 2010) ...............................................................................13

*Tober v. APROV.COM*,
No. 1:07CV1252, 2008 WL 4364221 (E.D. Va. Sept. 23, 2008) (Brinkema, J.)...................12

*U.S. Search, LLC v. U.S. Search.com Inc.*,
  300 F.3d 517 (4th Cir. 2002) ........................................................................................13, 14

*Zinner v. Olenych*,
  108 F. Supp. 3d 369 (E.D. Va. 2015) ............................................................................13, 14

**Statutes**

15 U.S.C. § 1125(d)(1) ......................................................................................................12, 16, 18

15 U.S.C. § 1127.........................................................................................................................15

28 U.S.C. § 1658(a) ...............................................................................................................16, 17

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition § 15:32 n.1 (4th ed.) ...........................14, 17

Fed. R. Civ. P. 56......................................................................................................................11, 12

S. Rep. 106-140............................................................................................................................17

Defendant LINDAWAGNER.COM ("Defendant"), by counsel, hereby opposes Plaintiff Linda Wagner's ("Plaintiff") Cross-Motion for Summary Judgment (the "Cross-Motion").  For the reasons set forth below, in Defendant's Brief ("Defendant's Memorandum") in Support of Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment ("Defendant's Motion"), and in Defendant's Reply in Support of Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment ("Defendant's Reply"), Defendant is entitled to judgment as a matter of law in its favor, denial of the Cross-Motion, and dismissal of Plaintiff's Complaint in its entirety.

## I.    PRELIMINARY STATEMENT

Even if Plaintiff's Complaint could somehow survive the Motion filed by Defendant eWeb Development, Inc. ("eWeb Development"), there are far too many disputed factual questions regarding the required elements of Plaintiff's claim for relief under the Anti-Cybersquatting Consumer Protection Act ("ACPA") for the Court to grant summary judgment in Plaintiff's favor.[1]  Unlike Defendant's Motion, which is based on undisputed facts that Plaintiff has conceded are ripe for judgment as a matter of law, the Cross-Motion is based on factual assertions that have not been subject to discovery and that likely involve factual disputes.

---

[1] Although it is not entirely clear from the Complaint whether Plaintiff intended to plead that the registration and use of the LINDAWAGNER.COM domain name constitutes trademark dilution or trademark infringement, Plaintiff concedes that she cannot establish essential elements of those putative claims.  With regard to dilution, Plaintiff does not argue that her purported mark satisfies the "difficult and demanding requirement" for fame, conceding that, at most, she is "famous as a Real Estate Agent in her home state."  Cross-Motion at 8.  Nor does she argue that Defendant's use of the LINDAWAGNER.COM domain name has diluted her purported mark in any way.  As to trademark infringement, Plaintiff does not attempt to argue that Defendant's use creates a likelihood of confusion.  *See* Br. in Supp. of Def.'s Mot. for J. on the Pleadings or in the Alternative Summ. J. ("Def.'s Memo.") at 17-20.  Thus, the only issue properly before the Court is Plaintiff's claim under the ACPA.

The Court previously denied a summary judgment motion filed by Plaintiff as "premature," agreeing with Defendant that "plaintiff has alleged minimal facts without any documentary evidence as to the use of her name as a trademark and has not provided any evidence as to traditional forms of proving secondary meaning." ECF No. 28 at 2. Nothing has changed in the 40 days between the issuance of that Order and the filing of Plaintiff's Cross-Motion to make Plaintiff's motion any more ripe for disposition. The factual allegations on which the Cross-Motion relies, and on which no fact discovery has been conducted, include the following: (1) Plaintiff's alleged use of the LINDAWAGNER.COM domain name before voluntarily allowing her domain name registration to expire in 2010, *see* Cross-Mot. at 5-7, 9; (2) Plaintiff's alleged use of the descriptive name "Linda Wagner" as her business name, *see id.* at 7; (3) Plaintiff's claimed "fame" as a real estate agent, *see id.*; (4) the geographic scope of Plaintiff's alleged use of her name as a trademark, *see id.* at 8; (5) Plaintiff's alleged plans to expand the geographic scope of her use of the "Linda Wagner" name as a trademark, *see id.*; and (6) alleged consumer recognition of Plaintiff's name in connection with her website and business, *see id.* at 9. Thus, the Cross-Motion is at best premature.

## II.   RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS.

The Cross-Motion does not include "a separately captioned section within the brief listing, in numbered-paragraph form, each material fact that [Plaintiff] contends is undisputed with appropriate citations to the record," as required by Local Civil Rule 56 and Paragraph 13 of the Rule 16(b) Scheduling Order in this case. *See* ECF No. 35. In an effort to comply with these requirements, Defendant responds to each of the factual assertions included in the Cross-Motion by numbering the assertions as set forth below:

**Assertion 1:** Defendant's "only purpose purchasing the domain was to SELL it for a profit." Cross-Motion at 4-5, 7.

**Response:**  Disputed.  eWeb Development routinely and customarily registers domain names, like LINDAWAGNER.COM, that contain wholly generic terms, and eWeb Development's business model includes buying domain names with the intent to help develop the domain name into a website and brand promotion tool.  *See* Declaration of Vy Phu (May 3, 2016) ("First Phu Decl."), Exhibit 1 to Def.'s Memo ¶¶ 7, 11.  Plaintiff has offered no factual basis for the assertion that selling the domain name was eWeb Development's "only purpose."

**Assertion 2:**  Defendant "is demanding thousands of dollars for her domain that he paid [12] dollars for."  Cross-Motion at 4.

**Response:**  Disputed.  eWeb Development never has initiated contact in an attempt to offer or sell the domain name to Plaintiff, and therefore is not "demanding" any amount for the domain name.  First Phu Decl. ¶ 10.  Moreover, Plaintiff has offered no factual basis for the assertion that eWeb Development paid 12 dollars for the domain name.

**Assertion 3:**  Defendant "knew WELL that plaintiff would come look for" the LINDAWAGNER.com domain name.  Cross-Motion at 4, 6.

**Response:**  Disputed.  Plaintiff has admitted that she knowingly and intentionally allowed the LINDAWAGNER.COM domain name to expire despite receiving a warning from the domain name registrar, GoDaddy, that "the domain name will become available for public use if not renewed."  Cross-Motion at 6.  Plaintiff has offered no factual basis to support the assertion that eWeb Development would have expected Plaintiff to "come look for" a domain name that she abandoned.  Moreover, eWeb Development had no prior knowledge of Plaintiff or her business prior to registering the domain name.  First Phu Decl. ¶ 9.

**Assertion 4:**  Plaintiff typed LINDAWAGNER.com "into a search engine, which then brought her straight to his splash page where upon contacting defendant, he attempted EXTORTION by

3

demanding thousands of dollars from plaintiff to get her domain back."  Cross-Motion at 4.

**Response:**    The discovery period in this case does not close until September 9, 2016, and Defendant has yet not had an opportunity to conduct factual discovery regarding the actions that caused Plaintiff to discover eWeb Development's registration of the domain name and her response thereto.  *See* Declaration of Vy Phu ¶ 9 (July 6, 2016) ("Second Phu Decl."), attached hereto as Exhibit A.  Defendant disputes Plaintiff's characterization of her communications with eWeb Development and, if Defendant's Motion is not granted, Defendant intends to serve written discovery requests regarding this subject and to address the subject in Plaintiff's deposition.

**Assertion 5:**  eWeb Development made Plaintiff "click a button BEFORE she would even inquirer[*sic*], to force her to an 'agreement' stating that she would not file any complaints against him in her home country, the US."  Cross-Motion at 4.

**Response:** Whether or not eWeb Development's website includes a forum selection clause is immaterial to the instant motion.

**Assertion 6:**  Plaintiff owned the LINDAWAGNER.com domain name "for [7] years prior to defendant and used it in GOOD FAITH for her business."  Cross-Motion at 5, 7-8.

**Response:** The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's use of the LINDAWAGNER.COM domain name prior to the time that she knowingly allowed her domain name registration to expire.  *See* Second Phu Decl. ¶ 8.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 7:**  "Defendant is not a REGISTERED domain name seller with ICANN.  This renders him not legitimate to hoard domains for selling.  If he was, his prices would have been regulated by ICANN the same as with ALL other REGISTERED sellers."  Cross-Motion at 5.

   **Response:**  Whether or not Defendant is an ICANN-accredited domain name registrar is immaterial to the instant motion, and Defendant disputes the suggestion that ICANN regulates or controls the secondary market for domain names or the prices set by domain name registrars.

**Assertion 8:**  "His 'services' to 'development' is a separate issue not governed by ICANN." Cross-Motion at 5.

   **Response:**  This alleged fact is immaterial to the instant motion.

**Assertion 9:**  "Defendant has not provided ANY evidence that he is a Registered ICANN seller of domains.  That renders him <u>the same as everyone else</u> when it comes to purchasing domains." Cross-Motion at 5.

   **Response:**  This alleged fact is immaterial to the instant motion.

**Assertion 10:**  Defendant "is not related to the 'Wagner' family name."  Cross-Motion at 5.

   **Response:**  Admitted that Wagner is not Defendant's family name, but Defendant disputes the implication that eWeb Development has no legal right to the LINDAWAGNER.COM domain name.

**Assertion 11:**  "The domain 'lindawagner.com' is first of a FAMILY Name domain, and secondly is not a website USED by defendant for some 'related travel content.'  Contrary the domain 'lindawagner.com' pointed to all of the plaintiff's online presence sites including 'REALTRACKS; where her profile is displayed as an independent REAL ESTATE agent along with homes she has for sale."  Cross-Motion at 5-6.

**Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's use of the LINDAWAGNER.COM domain name prior to the time that she knowingly allowed her domain name registration to expire.  *See* Second Phu Decl. ¶ 8.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 12:**  "Defendant only <u>parked</u> it on a splash page."  Cross-Motion at 6-7.

**Response:**  Defendant disputes that eWeb Development "parked" the LINDAWAGNER.COM domain name "on a splash page."  Since registering the LINDAWAGNER.COM domain, eWeb Development has used the domain name in a manner substantially similar to that depicted in Exhibit 7 to Defendant's Memo.  *See* Def.'s Memo., Ex. 7, First Phu Decl. ¶¶ 11-12.

**Assertion 13:**  "Plaintiff owned the domain name from 2003 to 2010."  Cross-Motion at 6.

**Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's ownership of the LINDAWAGNER.COM domain name.  *See* Second Phu Decl. ¶ 8.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 14:**  "Her last renewal date was November 2nd 2010."  Cross-Motion at 6.

**Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's ownership of the LINDAWAGNER.COM domain name.  *See* Second Phu Decl. ¶ 8.  Defendant

intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 15:** "Defendant almost immediately was snatched before plaintiff could renew it." Cross-Motion at 6.

      **Response:** Disputed. The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's ownership of the LINDAWAGNER.COM domain name. *See* Second Phu Decl. ¶ 8. Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition. On information and belief, Plaintiff could have renewed the LINDAWAGNER.COM domain name prior to the expiration date, during the grace period, or during the redemption period before eWeb Development would have had an opportunity to purchase the domain name.

**Assertion 16:** "The Godaddy Registrant provided the following information: *EXP. Aug 22nd 2010, 'No Fee' Grace period until Oct 1st 2010, then Redemption period until November 2nd 2010, whereafter any time after that the domain will become available for public purchase if not renewed.*" Cross-Motion at 6.

      **Response:** The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's ownership of the LINDAWAGNER.COM domain name. *See* Second Phu Decl. ¶ 8. Solely for purposes of the instant motion, admitted.

**Assertion 17:** "Defendant has domains on back order which he deems valuable after investigating such domain so he could steal it IMMEDIATELY after it expires." Cross-Motion at 6.

**Response:**  Defendant admits that eWeb Development routinely seeks to register domain names that contain wholly generic terms, including through the use of backorders.  *See* First Phu Decl. ¶ 6.  Defendant contends that eWeb Development is entitled to register such domain names and disputes Plaintiff's characterization of this business practice as "steal[ing]."

**Assertion 18:**  "He also knew he purchased a FAMILY name he is NOT related to and in bad faith."  Cross-Motion at 6.

**Response:**  Defendant admits that LINDAWAGNER.COM corresponds to the descriptive English name Linda Wagner and disputes that eWeb Development registered the domain name in bad faith.

**Assertion 19:**  "The WHOIS record clearly shows indeed who owned the domain prior to him who's name he can then search."  Cross-Motion at 6.

**Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's ownership of the LINDAWAGNER.COM domain name.  *See* Second Phu Decl. ¶ 8.  However, Defendant disputes that eWeb Development was aware of Plaintiff or her business activities prior to registering the domain name.  First Phu Decl. ¶ 9.

**Assertion 20:**  eWeb Development "is using her trademark 'lindawagner.com' to drive traffic to his website, where he is attempting to SELL her Trademark to someone else or her herself."  Cross-Motion at 7.

**Response:**  Defendant admits that eWeb Development purchased the descriptive domain name LINDAWAGNER.COM with the intent to help develop the domain name into a website and brand promotion tool.  First Phu Decl. ¶ 11.  Defendant disputes that Plaintiff has any trademark rights in the descriptive English name "Linda Wagner" or the domain name

LINDAWAGNER.COM.  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's claimed trademark rights in the name "Linda Wagner" or the domain name LINDAWAGNER.COM prior to the time that she knowingly allowed her domain name registration to expire.  *See* Second Phu Decl. ¶ 8.  Defendant intends to serve written discovery requests regarding these subjects and to address them in Plaintiff's deposition.

**Assertion 21:**  "Plaintiff further has used the name 'Linda Wagner' (her own name) as her business since 1983, long before domain names and internet was around. . . . This is proven in part to the Court by submitting plaintiff's Real Estate License (EXHIBIT 9, 10) , showing the date by which she started her vested strive."  Cross-Motion at 7 (internal citation omitted).

 **Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's business activities under the name "Linda Wagner".  *See* Second Phu Decl. ¶ 10.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 22:**  "Attached to this RESPONSE is further evidence of plaintiff's name being famous as a Real Estate Agent."  Cross-Motion at 7.

 **Response:**  Disputed.  Plaintiff does not appear to have attached any "evidence" to the Cross-Motion.  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's business activities under the names "Linda Wagner" and "1st  Miracle Realty & Property Management LLC".  *See* Second Phu Decl. ¶ 10.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 23:**  "Plaintiff however has acquired clients from all different states moving to Tennessee that found her on the internet through the years from which she is also consistently getting referrals through."  Cross-Motion at 8.

> **Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's business activities under the names "Linda Wagner" and "1st Miracle Realty & Property Management LLC".  *See* Second Phu Decl. ¶ 10.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 24:**  Plaintiff "has sold more than [400] homes thus far and planning on expanding her business countrywide."  Cross-Motion at 8.

> **Response:**  The discovery period in this case does not close until September 9, 2016, and Defendant has not yet had an opportunity to conduct factual discovery regarding Plaintiff's business activities under the names "Linda Wagner" and "1st Miracle Realty & Property Management LLC".  *See* Second Phu Decl. ¶ 10.  Defendant intends to serve written discovery requests regarding this subject and to address this subject in Plaintiff's deposition.

**Assertion 26:**  "He is a foreigner buying up domains of small businesses in the United States and then use those domains to drive traffic to his website, including the small business owners themselves of which he then attempts to extort monies from by asking thousands for a domain they are entitled to purchase UNHINDERED from a Registered ICANN domain seller."  Cross-Motion at 8.

> **Response:**  Defendant admits that eWeb Development is a Canadian corporation that provides assistance in the registration, renewal, and development of domain names containing generic personal names and whose business model includes buying domain names with the intent

to help develop the domain name into a website and brand promotion tool.  *See* First Phu Decl.

¶¶ 3, 5, 7.  Defendant disputes the remaining assertions, which have no factual basis.

**Assertion 27:**  "The domain in essence became her trademark on the internet.  The domain by

which current and past clients would search for her."  Cross-Motion at 8-9.

**Response:**  Defendant disputes that Plaintiff has any trademark rights in the descriptive

English name "Linda Wagner" or the domain name LINDAWAGNER.COM.  The discovery

period in this case does not close until September 9, 2016, and Defendant has not yet had an

opportunity to conduct factual discovery regarding consumer perception of the

LINDAWAGNER.COM domain name or Plaintiff's current domain name,

BUYREALESTATENASHVILLE.COM.  *See* Second Phu Decl. ¶¶ 8, 10.  Defendant intends to

serve written discovery requests regarding this subject and to address this subject in Plaintiff's

deposition.

## III.   <u>PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT.</u>

Summary judgment is proper only where "there is no genuine issue as to any material

fact" and where "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  On a motion for summary

judgment, all "factual disputes and any competing, rational inferences [are resolved] in the light

most favorable to the party opposing that motion."  *Rossignol v. Voorhaar,* 316 F.3d 516, 523

(4th Cir. 2003) (internal quotations marks and citations omitted).  Summary judgment should not

be granted if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If a non-movant

shows by affidavit or declaration that it cannot present facts essential to justify its opposition, the

court should: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

declarations or to take discovery; or (3) issue any other appropriate order.  Fed. R. Civ. P. 56(d).

Although there are no genuine issues of material fact as to eWeb Development's lack of specific bad faith intent to profit from Plaintiff's purported mark, making Defendant's motion for summary judgment ripe for consideration, the same is not true of Plaintiff's Cross-Motion. To establish a *prima facie* case of cybersquatting under the ACPA, a plaintiff must prove first that she has a valid and enforceable mark and that the registrant: (i) has a bad faith intent to profit from the plaintiff's legitimate trademark; and (ii) registers, traffics in, or uses a domain name that is (a) identical or confusingly similar to a distinctive mark, (b) identical, confusingly similar to, or dilutive of a famous mark, or (c) one of an enumerated list of defined marks (inapplicable here). *See* 15 U.S.C. § 1125(d)(1)(A). Plaintiff faces numerous insurmountable barriers to establishing a *prima facie* case of cybersquatting. Even if she could establish a *prima facie* case, Plaintiff still would not be entitled to summary judgment, as her claim is barred by the statute of limitations and the registrant's actions are protected under the ACPA's safe harbor based on its reasonable belief that its registration and use of LINDAWAGNER.COM was lawful.

A.   **There is a Material Factual Dispute Regarding Plaintiff's Claimed Trademark Rights.**

Plaintiff does not own a United States registration for the alleged "Linda Wagner" or "lindawagner.com" trademarks. Accordingly, to prove that she has a valid mark that is entitled to protection under the ACPA, Plaintiff must prove that she has common law rights to one or both marks. *See Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 598 (E.D. Va. 2013) ("Common law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to protect against the infringement of such rights."). "To establish a protected interest in an unregistered trademark, an owner must show that the mark is 1) used in commerce and 2) distinctive." *See Tober v. APROV.COM*, No. 1:07CV1252 LMB/TCB, 2008 WL 4364221, at *3 (E.D. Va. Sept.

12

23, 2008) (Brinkema, J.) (citing *Internat'l Bancorp, LLC v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir.2003)).  A failure to establish common law rights is fatal to a claim for relief under the ACPA.  *See id.* at *3-4, 9.

A person's name, by default, is a descriptive term not entitled to trademark protection. *See Zinner v. Olenych*, 108 F. Supp. 3d 369, 381 (E.D. Va. 2015) (citing *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)); *Tana v. Dantanna's*, 611 F.3d 767, 776 (11th Cir. 2010) (finding that a person's full name is no more distinctive than a personal or surname alone).[2]  To obtain trademark protection for a descriptive term, such as a person's name, the mark holder must establish that the mark has "acquired a 'secondary meaning' in the minds of the public."  *Zinner*, 108 F. Supp. 3d at 380 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)).

"Proof of secondary meaning entails a rigorous evidentiary standard."  *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 525 (4th Cir. 2002) (*citing Perini*, 915 F.2d at 125). Although no single factor is determinative, the following factors are relevant to the question of secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) sales success, (4) unsolicited media coverage of the product, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use."  *Id.* (*citing Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985)).  "[T]he individual seeking protection for a mark bears the burden of proving that secondary meaning has attached within the relevant class of consumers." 2 McCarthy on Trademarks and Unfair Competition § 15:32 n.1 (4th ed.) (*citing*

---

[2] Courts have offered three reasons for refusing to extend greater trademark protection to a name: (1) "a reluctance to forbid a person to use his own name in his own business"; (2) a recognition that "some names are so common . . . that consumers will not assume that two products having the same name therefore have the same source"; and (3) the concern that "preventing a person from using his name to denote his business may deprive consumers of useful information."  *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 989 (7th Cir.2004)

*Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19, 71 U.S.P.Q.2d 1810 (1st Cir. 2004)).  "'[T]he existence of secondary meaning is generally a question for the trier of fact;' however, a defendant is entitled to summary judgment on the issue of secondary meaning if a plaintiff fails to present evidence to satisfy any of the factors relevant to secondary meaning."  *Zinner*, 108 F. Supp. 3d at 382 (*citing Perini Corp.*, 915 F.2d at 525-26).

A genuine factual dispute exists regarding whether Plaintiff has established secondary meaning in the common English name Linda Wagner, which Plaintiff shares with thousands of other individuals.  While the parties agree that Linda Wagner is Plaintiff's name, the undisputed facts end there.  Plaintiff has not provided any evidence of: (1) advertising expenditures, (2) consumer studies linking the mark to plaintiff as the source, (3) sales success, (4) unsolicited media coverage of the product/service, or (5) attempts to plagiarize the mark.  Although Plaintiff has asserted that she has used the name Linda Wagner in her business since 1983, "length of time *alone* is insufficient to establish secondary meaning."  *U.S. Search*, 300 F.3d at 526 n. 12 (emphasis in original).  Defendant has not had an opportunity to conduct discovery as to the breadth of Plaintiff's use of the Linda Wagner name as a purported mark, the continuity of Plaintiff's use of the Linda Wagner name, and whether such use has caused the consuming public to singularly associate the name Linda Wagner with Plaintiff's business.  However, Defendant has presented undisputed evidence that there are more than 1,000 individuals named Linda Wagner throughout the United States, including several who work in the real estate industry.  *See* Def.'s Memo. Exs. 10 & 11.  Accordingly, there is a genuine material dispute regarding whether Plaintiff has established secondary meaning in her name.

To the extent that Plaintiff is claiming separate trademark rights in LINDAWAGNER.COM, she has not and cannot establish independently enforceable rights in

that mark.  A top level domain such as .com generally serves no source indicating function, and therefore typically cannot render an otherwise generic or descriptive mark distinctive.  *See In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1174 (Fed. Cir. 2004) (citing Trademark Manual of Examining Procedure § 1209.03(m) (3d ed.2003)).  Here, Plaintiff does not contend that the ".com" in LINDAWAGNER.COM possesses any source-identifying function, so the domain name's distinctiveness is tied to the distinctiveness of the name Linda Wagner (which, as explained above, is the subject of a factual dispute).  *See id.*  Nevertheless, Plaintiff abandoned any rights she had theoretically established in the LINDAWAGNER.COM domain name when, in 2010, she allowed her domain name registration to expire with full knowledge that it would be available for public purchase.  *See* Cross-Motion at 6; 15 U.S.C. § 1127.  Accordingly, Plaintiff has not established an enforceable trademark right in LINDAWAGNER.COM.

### B.   Plaintiff Cannot Establish That eWeb Development Acted With Bad Faith Intent to Profit From Her Mark.

Plaintiff's claim that her purported prior common law use of Linda Wagner as a trademark "alone renders the defendant a cybersquatter," Cross-Motion at 7, reflects a critically-flawed understanding of the ACPA in that it assumes that a party could cybersquat on a trademark that it does not know exists.  In evaluating a claim of cybersquatting under the ACPA, courts focus on the registrant's subjective intent in registering the domain name, and whether the registrant had a "bad faith intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added); *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 643 (E.D. Mich. 2001); *Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*, No, CV 10-03738 AB (CWx), 2015 WL 5311085, at *51-52 (C.D. Cal. Sept. 10, 2015) (contrasting "a generalized intent to profit with the ACPA's *bad faith* intent to profit off [plaintiff's] *specific marks*") (emphasis in original).  For the reasons explained in Defendant's Reply in Support of Motion for

Judgment on the Pleadings or in the Alternative Motion for Summary Judgment ("Def.'s Reply"), eWeb Development did not know of Plaintiff's claimed trademark rights and therefore could not, as a matter of law, act with the required subjective intent to profit from her mark.  *See* Def.'s Reply at 3-11.

On July 6, 2016, Defendant's counsel received a copy, through the Court's Electronic Case Filing system, of Plaintiff's Motion to Amend her Cross-Motion, in which she attempts to argue that eWeb Development has violated the standard for bad faith under ICANN's Uniform Dispute Resolution Policy ("UDRP").  *See* ECF No. 51.  As an initial matter, Plaintiff's filing is improper and should not be considered.  Local Rule 7(F)(1) provides for the filing of an opening brief by the movant, a responsive brief in opposition, and a rebuttal brief.  "No further briefs or written communications may be filed without first obtaining leave of Court."  The Court reinforced this schedule in its June 27 Order, stating that "if an opposition brief and a rebuttal brief are filed, that will conclude the briefing of Wagner's Cross-Motion for Summary Judgment."  *See* ECF No. 43.

Nevertheless, Plaintiff's reference to the UDRP rules is misplaced.  As the Fourth Circuit has declared:

> The ACPA recognizes the UDRP only insofar as it constitutes a part of a policy followed by registrars in administering domain names, and the UDRP is relevant to actions brought under the ACPA in two contexts. First, the ACPA limits the liability of a registrar in respect to registering, transferring, disabling, or cancelling a domain name if it is done in the "implementation of a *reasonable policy*" (including the UDRP) that prohibits registration of a domain name "identical to, confusingly similar to, or dilutive of another's mark." 15 U.S.C. § 1114(2)(D)(ii)(II) (emphasis added). Second, the ACPA authorizes a suit by a domain name registrant whose domain name has been suspended, disabled or transferred *under that reasonable policy* (including the UDRP) to seek a declaration that the registrant's registration and use of the domain name involves no violation of the Lanham Act as well as an injunction returning the domain name.

16

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003). Because neither of the two limited applications of the UDRP is applicable here, the standard for analyzing bad faith under the UDRP is irrelevant to the instant proceeding and the Cross-Motion must fail.

> **C.**   **Plaintiff's Claim is Barred By the Statute of Limitations.**

Plaintiff did not file her claim until more than four years after eWeb Development registered the LINDAWAGNER.com domain name; therefore, her claim is time barred. Under the federal "catch-all" statute of limitations, a claim based on a federal law that does not itself include a statute of limitations must be filed within four years after the cause of action arises. *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues"). Because the federal statute of limitations was enacted on December 1, 1990, any federal statute enacted after December 1, 1990 that does not include a comparable statute of limitations is subject to the four year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (finding that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment").

Plaintiff's claim is governed by the federal "catch all" statute of limitations, as the ACPA was enacted in 1999 and does not include any statute of limitations provision. *See* 6 McCarthy on Trademarks and Unfair Competition § 31:23 (4th ed.) (opining that claims under the ACPA are subject to the federal "catch-all" statute of limitations).[3] It is undisputed that eWeb

---

[3] Without analyzing the applicability of the federal "catch-all" statute of limitations, this Court has applied the Virginia's statute of limitations for damaging personal property to ACPA claims,

Development (or a related predecessor company) registered the LINDAWAGNER.COM domain name on or about November 9, 2010.  *See* Compl. Ex. 9 (reflecting creation date of Nov. 9, 2010); First Phu Decl. ¶ 6.  Accordingly, the deadline for Plaintiff to file a claim under the federal "catch-all" statute of limitations would have been November 9, 2014.[4]  Because Ms. Wagner did not file her complaint in the instant matter until January 14, 2016, it is untimely under 28 U.S.C. § 1658(a).  Defendant will seek leave to file a motion dismissing Plaintiff's claim as time-barred if the Court does not grant Defendant's Motion.

## D.  eWeb Development's Registration and Use of the LINDAWAGNER.COM Domain Name is Protected Under the ACPA Safe Harbor.

Even if Plaintiff could somehow establish a *prima facie* case of cybersquatting under the ACPA, the Court should nevertheless deny Plaintiff's Cross-Motion to allow proof of Defendant's affirmative defense that eWeb Development reasonably believed that its use of the LINDAWAGNER.COM domain name was a fair use or otherwise lawful.  Under the ACPA's safe-harbor provision, "[b]ad faith intent ... shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  There are

---

under the theory that this is the appropriate statute of limitations for claims under the Lanham Act.  *See Lamparello v. Falwell*, 360 F. Supp. 2d 768, 775 (E.D. Va. 2004), *rev'd on other grounds*, 420 F.3d 309 (4th Cir. 2005); *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 488 (E.D. Va. 2002).  After the *Lamparello* and *International Banccorp* decisions, however, the Fourth Circuit, in *Baldwin v. City of Greensboro*, held that where a subsequent enactment does "more than simply clarify" an existing statute and establishes additional rights, Section 1658 should apply.  *See* 714 F.3d 828, 834 (4th Cir. 2013).  Like the statute at issue in *Baldwin*, the ACPA creates new rights for victims of cybersquatting.  *See* S. Rep. 106-140, at 8 (1999), S. 1255 at 11 (as reported by S. Comm. on the Judiciary July 29, 1999) ("Under the bill, as amended, the abusive conduct that is made actionable is appropriately limited just to bad-faith registrations and uses of others' marks by persons who seek to profit unfairly from the goodwill associated therewith.").  Accordingly, the federal four year statute of limitations applies to Plaintiff's claim.

[4] Even if Virginia's five year statute of limitations for property damage applied, Plaintiff's lawsuit would still be untimely, as it was filed after November 9, 2015.

several reasons why eWeb Development both "believed and had reasonable grounds to believe" that the use of the LINDAWAGNER.COM domain name was a fair use or otherwise lawful: (1) eWeb Development routinely and customarily registers domain names containing wholly generic terms and not targeted at any individual, Second Phu Decl. ¶ 7; (2) eWeb Development assumed no specific individual would be able to claim United States federal trademark rights in such a common and generic name, id. ¶ 8; (3) eWeb Development had no prior knowledge of Plaintiff or her business activities; id. ¶ 9; and (4) there are more than 1,000 individuals named Linda Wagner throughout the United States, including several who work in the real estate industry, *see* Def.'s Memo. Exs. 10 & 11.

The United States District Court for the Southern District of New York addressed a similar issue in *Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*, 89 F. Supp. 2d 464 (S.D.N.Y. 2000). There the defendant registered the Internet domain name "cello.com" despite the fact that the plaintiffs had registered the trademark "cello" in connection with their high end audio equipment business two years prior. *Id.* at 466. In discussing the ACPA safe harbor, the court observed:

> This was not, for example, a situation where a cybersquatter registered "applecomputer.com" and then tried to extort Apple Computer into paying him money to release the domain name. Rather, the instant case is more akin to the situation where a person registers "apple.com" and then offers it to a number of parties that might be interested in the domain name. In fact, Storey approached at least nine other companies or individuals to offer them "cello.com."

*Id.* at 474. Like "apple" and "cello", the name Linda Wagner has generic or descriptive significance and, in fact, is the name of numerous real estate professionals and other individuals. Thus, it was reasonable for eWeb Development to believe that its use of the LINDAWAGNER.COM domain name was a fair use or otherwise lawful.

IV.      **CONCLUSION**

For the foregoing reasons, and those stated in Defendant's Memorandum and Reply, the

Court should: (1) deny Plaintiff's Cross-Motion for summary judgment in its entirety; (2) grant

summary judgment in Defendant's favor; and (3) grant such further relief as this Court deems

proper.


Dated: July 6, 2016                    By:       _____/s/ Attison L. Barnes, III /s/_____

                                                 Attison L. Barnes, III (VA Bar No. 30458)
                                                 David E. Weslow (*for pro hac admission*)
                                                 WILEY REIN LLP
                                                 1776 K St. NW
                                                 Washington, DC 20006
                                                 (202) 719-7000 (phone)
                                                 (202) 719-7049 (fax)
                                                 abarnes@wileyrein.com
                                                 dweslow@wileyrein.com

                                                 Counsel for Defendant LINDAWAGNER.COM

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July 2016 a true and correct copy of the foregoing was filed using the Court's CM/ECF system and served via First Class Mail, postage prepaid, to the following:

Linda Wagner
1624 Rachel's Retreat Cir.
Hermitage, TN 37076

/s/ Attison L. Barnes, III /s/
Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com

*Counsel for Defendant LINDAWAGNER.COM*