IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LINDA L. WAGNER,                          )
                                          )
    Plaintiff,                        )
                                          )
    v.                                )          1:16-CV-53 (LMB/IDD)
                                          )
LINDAWAGNER.COM,                          )
    an Internet domain name,          )
                                          )
    Defendant.                        )

<u>MEMORANDUM OPINION</u>

Before the Court are defendant <lindawagner.com>'s ("defendant" or "the domain name") Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment [Dkt. No. 36] and plaintiff Linda L. Wagner's ("plaintiff" or "Wagner") Cross-Motion for Summary Judgment [Dkt. No. 41] ("Cross Motion"). On October 16, 2016, proceeding <u>pro se</u>, plaintiff first instituted a civil action naming as defendants <lindawagner.com> and "respondent" eWeb Development ("eWeb"), a Canadian information technology company, alleging violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). On December 21, 2015, upon the motion of defendants, the Court dismissed that complaint without prejudice on the grounds that plaintiff failed to properly complete service as mandated by the ACPA. On January 14, 2016, Wagner filed a substantially similar civil action, this time solely against <lindawagner.com> <u>in rem</u>, alleging one count under the ACPA. Compl. [Dkt. No. 1].

In the pending Complaint, plaintiff alleges that she is a real estate agent in Tennessee who uses her name, Linda Wagner, to operate her business, and that she owned the domain name from 2003 to 2010, when she allowed the registration to lapse. Compl. 2-3. She alleges that she

first contacted eWeb in December 2012 and offered to purchase the domain name. Compl. 5.

When the parties could not come to an agreement regarding an appropriate price, Wagner made

no further attempt to obtain the domain name until May 2015. Id. The Complaint alleges that in

May 2015, plaintiff accessed the domain name in an attempt to re-register it and the domain

name directed her to a page that provided a means to contact the current registrant if the person

accessing the page was interested in purchasing the domain name or having the registrant

develop a website at that domain name. Id. Wagner filled out the form to submit an inquiry about

purchasing the domain name, but the parties were unable to agree on a price after Wagner stated

the maximum she would be willing to pay would be $1000 and then lowered that amount to

$500. Id. at 7.

In its motion, defendant argues that Wagner cannot satisfy any of the requisite elements

of the ACPA. Br. in Supp. of Def.'s Mot. for J. on the Pleadings or in the Alt. Mot. for Summ. J.

1 [Dkt. No. 37] ("Def.'s Br."). In Wagner's combination cross-motion and opposition, she

contends that eWeb has no lawful claim to ownership of <lindawagner.com> and acted in bad

faith when registering the domain name, which entitles her to ownership of the domain name.

Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. 5-6 [Dkt. No. 41]

("Wagner Opp'n").[1] The parties apparently agree that the undisputed factual record "is ripe for

disposition on the question of whether eWeb Development acted with a specific bad faith intent

to profit from [p]laintiff's alleged mark through the registration and use of

LINDAWAGNER.COM." Def.'s Reply 2. Accordingly, for the reasons that follow, defendant's

---

[1] Defendant has filed an opposition to that motion, Opp'n to Cross-Mot. for Summ. J. [Dkt. No. 52] ("Def.'s Opp'n"), as well as a reply in support of its own motion. Reply in Supp. of Def.'s Mot. [Dkt. No. 48] ("Def.'s Reply"). In addition to filing a permitted reply in support of her cross-motion, Pl.'s Rebuttal to Def.'s Reply [Dkt. No. 54] ("Pl.'s Reply"), Wagner improperly filed a surreply without first seeking leave of court. Pl.'s Surreply to Def.'s Opp'n [Dkt. No. 55] ("Pl.'s Surreply").

motion will be granted and plaintiff's motion will be denied.

## I.   UNDISPUTED FACTS[2]

eWeb is a Canadian corporation engaged in the business of registering domain names that contain generic terms, Def.'s Br., Ex. 1 (Phu Decl. 1), ¶ 6, and then offering to sell those domain names alone or develop websites for consumers using the domain names. Id. ¶ 11. Specifically, eWeb describes its business model as including "provid[ing] assistance in the registration, renewal, and development of domain names containing generic personal names and . . . buying domain names with the intent to help develop the domain name into a website and brand promotion tool." Def.'s Opp'n 10-11 (citing Phu Decl. 1 ¶¶ 3, 5, 7).

Linda Wagner is an independent real estate agent based in Tennessee who registered the domain name in 2003 but allowed the registration to lapse on November 2, 2010. Def.'s Br. 2; Def.'s Opp'n 6. eWeb purchased the domain name on November 9, 2010. Def.'s Br. 2. There is no indication in this record that eWeb had any specific knowledge of Wagner or her business when it purchased the domain name. Id. eWeb never approached Wagner to offer to sell the domain name to her, but on approximately December 12, 2012, Wagner contacted eWeb in an attempt to purchase the domain name and subsequently contacted eWeb once more after it

---

[2] As an initial matter, the Court considers as undisputed all of defendant's proposed undisputed facts to which plaintiff has merely provided a denial, without citing to the record. Under Fed. R. Civ. P. 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." If a party fails to properly support a factual dispute, a court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). In addition, "[t]he facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." Anglinmatumona v. Micron Corp., No. 1:11-CV-572 AJT/TRJ, 2012 WL 1999489, at *4 (E.D. Va. June 4, 2012).

rejected her offer. Id. at 3 (citing Compl. 5).[3] There is no evidence in this record of anyone else contacting eWeb about purchasing the domain name.

On May 11, 2015, Wagner again contacted eWeb by using a form on a webpage advertising eWeb's services that linked from the domain name. Def.'s Br. 3. Wagner requested a price quotation to purchase the domain name, explaining "This was my web address sometime back. I am just a small time realtor with a little business." Def.'s Br., Ex. 3 (May 11 Email). The parties were unable to agree upon a price after exchanging a few emails. Def.'s Br., Exs. 4, 5, 6.

On August 31, 2015, Wagner again emailed eWeb demanding an immediate transfer of the domain name and threatening to file suit, asserting "It is my belief that you deliberately committed the act of cybersquatting by registering the domain in your companies [sic] name. You are not using the domain other than purely for the intent of making a profit off me." Def.'s Br., Ex. 8 (Wagner Aug. 31 Email). eWeb responded stating:

> Thanks for your email. Linda Wagner is a very common name, with over 1,400 listed in the whitepages.com for the US alone . . . With a common name like this, no one can claim exclusive use of such a name. Being in Canada, we searched the Canadian trademark database and we couldn't find any trademarks registered for Linda Wagner. We couldn't find one in the US either. If our search wasn't thorough enough and you have a registered trademark, you're welcome to have your lawyer send us your trademark registration information and we'll have our lawyer review it and respond further. Regardless, we have not used this domain in any way that conflicts with anyone's trademarks. The .com domain is one of many options for this name. With hundreds of new domain extensions introduced, we're sure you can find many suitable domains available for you to use. Good luck with your domain search.

Def.'s Ex. 9 (eWeb Aug. 31 Email). On September 11, 2015, plaintiff responded to that email with a message with the subject line "2nd NOTICE TO RELEASE DOMAIN NAME 'LINDAWAGNER.COM'" asserting that eWeb had "deliberately hijack[ed] a domain name"

---

[3] It appears that Wagner originally told eWeb that her budget was "less than $1000" and they replied that their quote for the domain name would be higher than that. Def.'s Br., Ex. 4. Then, a week later, Wagner stated in an email "500 is all I am willing to pay. I just bought another domain name and have two now that work." Def.'s Br., Ex. 6. Nevertheless, specific evidence as to the exact price offered to plaintiff by eWeb is not in the record.

and that "[i]t is considered extortion [for] [eWeb to] demand monies to release the domain to the original or not original registrant." Id.

It is undisputed that Wagner does not own a registered mark, Compl. 4, and that there are more than 1,000 individuals named Linda Wagner throughout the United States, located in all fifty states, and several Linda Wagners in the real estate industry. Def.'s Br., Exs. 10, 11.

## II.   DISCUSSION

Defendant primarily argues that summary judgment is warranted because the undisputed facts fail to show that eWeb acted with the requisite bad faith intent to profit from Wagner's alleged mark. In response and in her Cross-Motion for Summary Judgment, Wagner asserts several reasons why she believes eWeb acted with bad faith intent to profit from the registration of the domain name; however, Wagner does not make any showing as to any of the other elements of an ACPA claim aside from the conclusory assertion that she has established secondary meaning so as to justify common law trademark protection because she has "showed the court her use of the domain 'lindawagner.com' as her trademark for seven years." Cross-Motion 3. Defendant contends in response that there are several factual disputes that require the completion of discovery as to whether Wagner had a protected mark, which preclude summary judgment in plaintiff's favor; however, defendant asserts that the record has been fully developed with regard to the question of bad faith intent and that the undisputed facts preclude any finding that eWeb acted with bad faith intent.

### A. Standard of Review

Summary judgment is merited where the record demonstrates that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a court is presented with cross-motions for summary judgment, it must consider each motion "separately on its own merits to determine whether

either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516,

523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir.

1997)) (internal quotation marks omitted). Therefore, with respect to each motion, the court must

"resolve all factual disputes and any competing, rational inferences in the light most favorable to

the party opposing that motion," id. (quoting Wightman v. Springfield Terminal Ry. Co., 100

F.3d 228, 230 (1st Cir. 1996)) (internal quotation marks omitted); however, all inferences drawn

in the nonmovant's favor must "fall within the range of reasonable probability and not be so

tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable

Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).

   Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [opposing

party's] position will be insufficient" to merit summary judgment. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); see also Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir.

2009) ("[A] nonmovant cannot defeat summary judgment with merely a scintilla of evidence.").

Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248, and any existing

factual dispute must be both "material" and "genuine," such that it has the potential to "affect the

outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th

Cir. 2001).

   A movant may prevail on a Rule 56 motion by showing "that there is an absence of

evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322-25

(1986) ("[T]he plain language of [Rule 56(a)] mandates the entry of summary judgment...against

a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."); see also

Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 94 (4th Cir. 2011) ("[S]ummary

judgment is proper if the nonmoving party fails to make a sufficient showing of an essential

element of that party's case."). The nonmoving party must provide "specific facts," not simply

"metaphysical doubt[s]," establishing that there is a genuine dispute for trial. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks

omitted). Should the nonmovant fail to do so with respect to an "essential element" of his case,

the movant is entitled to summary judgment as a matter of law. Rhodes, 636 F.3d at 94.

### B. The ACPA

To succeed on a claim under the ACPA, Wagner must prove all of the following

elements: "(1) Defendants registered, trafficked in, or used a domain name; (2) that was identical

or confusingly similar to a mark owned by Plaintiff; (3) that such mark was [registered, famous,

or] distinctive at the time Defendants registered the domain name; and (4) Defendants did so

with a bad faith intent to profit from such mark." Zinner v. Olenych, 108 F. Supp. 3d 369, 379

(E.D. Va. 2015).[4]

### 1. Protected Mark

Inherent in Wagner's Cross-Motion for Summary Judgment is an argument that she has a

protectable mark. Cross-Motion 3. Indeed, although she does not make any actual showing, she

---

[4] Although the in rem provision of the ACPA provides for in rem jurisdiction against domain names for traditional infringement or dilution claims under the Lanham Act, Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 228 (4th Cir. 2002), the Court will only address plaintiff's claim of bad faith intent to profit. As defendant correctly points out, plaintiff concedes that she cannot establish the essential elements of traditional infringement or dilution claims. Def.'s Reply 2, n.1. With regard to dilution, Wagner does not argue that her purported mark "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," 15 U.S.C. § 1125(c)(2)(A); rather, she admits that she is at most "famous as a Real Estate Agent in her home state." Pl.'s Opp'n 8. She also does not proffer any argument suggesting that the registrant's use has diluted her purported mark. With regard to trademark infringement, Wagner never raises any argument in support of likelihood of confusion and she has presented no evidence of confusion. Def.'s Br. 17-20.

asserts that she has established secondary meaning because she has "showed the court her use of the domain 'lindawagner.com' as her trademark for seven years." Id. Defendant has opposed the motion on the issue of whether plaintiff has a protectable mark, arguing that discovery does not close until September 9, 2016 and that there are material issues of fact in dispute that preclude summary judgment on that element. Def.'s Opp'n 12-15 Although it is true that discovery has not yet closed, in part because plaintiff has refused to sit for a deposition in this jurisdiction, see Mot. for Protective Order [Dkt. No. 57], Jul. 26, 2016, the Court finds that the record is sufficiently developed that it can conclude that plaintiff is unable to make a showing that she owns a protected mark.

Reading the pleadings generously, plaintiff appears to claim that she has a property interest in the mark; however, because plaintiff never registered her mark, the only basis upon which it could be protected would be under the common law by establishing secondary meaning. "Importantly, personal names are not per se protected as a matter of course; rather, to gain the protection of the statute, a personal name used as a registered domain name must have acquired a secondary meaning at the time of registration." Carl v. bernardjcarl.com, 662 F. Supp. 2d 487, 497 (E.D. Va. 2009), aff'd in part, vacated in part, remanded, 409 F. App'x 628 (4th Cir. 2010). "Secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise. In the case of a trade name, secondary meaning is [t]he power of a name . . . to symbolize a particular business. If a trade name has not acquired secondary meaning, the purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark." Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125 (4th Cir. 1990) (internal citations and quotation marks omitted).

This secondary meaning must exist within defendant's trade area and in advance of defendant's entrance into the market. Id. at 125-26. Indeed, "[p]roof of secondary meaning entails vigorous evidentiary requirements," and when conducting this inquiry, courts look to factors like "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." Id. at 125.

Although plaintiff now asserts that she intends to operate a nationwide business, she has provided no evidence to that effect, nor any evidence going to any of the factors enumerated in Perini. There is no evidence in the record that Wagner has ever conducted a real estate transaction outside of Tennessee; indeed, she has not alleged that she is licensed in any other state and she referred to herself as a "small time realtor" when negotiating with eWeb to purchase the domain name. In turn, there is no indication that eWeb's trade area centers on Tennessee, the only trade area in which plaintiff has ever used the mark. These facts alone defeat any claim of secondary meaning. Similarly, it is undisputed that plaintiff allowed registration of the domain name to lapse and has not used it for nearly six years without making a consistent or concerted effort to get it back. Moreover, plaintiff has neither argued nor provided any evidence that during the seven years she used the mark she spent money advertising the website, had great success in real estate sales generated from the website, received any unsolicited media coverage of the website or her business, or that anyone ever attempted to plagiarize the mark by passing themselves off as Linda Wagner. Further defeating any contention that the mark has developed secondary meaning, there is no evidence in the record that suggests that anyone has attempted to buy or actually bought the mark in the nearly six years that it has been available for purchase from eWeb. Accordingly, the Court finds that plaintiff does not satisfy the prerequisite for

bringing an action under the ACPA because she has not shown that she has a protectable mark.

For these reasons, her Cross-Motion for Summary Judgment fails.

### 2. Bad Faith Intent to Profit

Even if plaintiff could make a showing that the mark is protected, defendant has based its

Motion for Summary Judgment on the argument that plaintiff is unable to establish the necessary

element of bad faith intent to profit. The ACPA provides nine factors that a court may consider

in evaluating the existence of bad faith on the part of eWeb, which is referred to as the "person"

in these factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration

is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

Based on the legislative history of the ACPA the Fourth Circuit has explained that "[t]hese factors attempt to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of others' marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, fair use, etc. The first four [factors] suggest circumstances that may tend to indicate an absence of bad-faith intent to profit from the goodwill of a mark, and the others suggest circumstances that may tend to indicate that such bad-faith intent exists." Lamparello v. Falwell, 420 F.3d 309, 319-20 (4th Cir. 2005) (emphasis, internal citations, and quotation marks omitted).

As such, pursuant to the ACPA's legislative intent, "a court need not consider every factor in each case; instead the factors are intended to serve as a guide while the court carefully considers 'whether the conduct at issue is motivated by a bad faith intent to profit.'" Volvo Trademark Holding AB v. Volvospares.com, 703 F. Supp. 2d 563, 567 (E.D. Va. 2010) (quoting Lamparello, 420 F.3d at 319–320). Indeed, "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'" Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264, 268 (4th Cir. 2001) (quoting Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 499 (2d Cir. 2000)).

In addition, the ACPA provides a "safe harbor," directing that the requisite bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Nevertheless, "[a] defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the

11

Act's safe harbor provision." <u>Virtual Works</u>, 238 F.3d at 270.

Applying the undisputed facts of the instant civil action to the factors listed in the ACPA and evaluating the broader context of this claim, the Court concludes that defendant lacked the requisite bad faith intent for Wagner to succeed on her claim. The first two factors weigh in favor of a finding of bad faith intent on the part of eWeb because it has neither trademark nor intellectual property rights in the domain name and the domain name is not its legal name. Similarly, the third factor, eWeb's prior use of the domain name in connection with the bona fide offering of any goods or services, somewhat weighs in favor of a finding of bad faith intent. Although eWeb's president has averred and Wagner has not disputed that eWeb's business model includes providing website design services, which apparently were offered on a website linked to the domain name, Phu Decl. 1 ¶¶ 3, 4, 5, 11, eWeb only began using the domain name after Wagner's use. The fourth factor, bona fide noncommercial or fair use of the mark in a site accessible under the domain name, is inapplicable here.

Several of the latter five factors weigh heavily in this action. The fifth factor, whether eWeb acted with an intent to divert consumers from Wagner's "online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site" strongly weighs against a finding of bad faith. Importantly, it is undisputed that eWeb had no specific knowledge of Linda Wagner, her prior use of the domain name, or her real estate business in Tennessee. <u>See, e.g.</u>, <u>Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.</u>, 104 F. Supp. 3d 371, 382 (S.D.N.Y. 2015) ("No evidence has been presented with respect to Defendants' intent in registering their domain names. Plaintiff does not even assert that Defendants had knowledge

of Plaintiff's marks before Defendants purchased 'flatratemovers.com' in 2001."). As such, it is impossible to infer that eWeb acted with intent to harm the goodwill associated with a purported mark of which it was unaware.

Ultimate Living International, v. Miracle Greens Supplements, Inc., No. 3:05-CV-1745-M, 2007 WL 14258 (N.D. Tex. Jan. 3, 2007), which is relied upon by defendants, Def.'s Reply 5, is instructive in this regard. In Ultimate Living, the plaintiff sold "Green Miracle," a nutritional supplement nationwide since 1996 and registered the mark in 1997. 2007 WL 14258, at *1. The defendant, Miracle Greens, had been selling a nutritional supplement of the same name since 1997. Id. In bringing suit, the plaintiff raised a count under the ACPA alleging that Miracle Greens' use of <www.miraclegreens.com> violated the ACPA. Id. at *7. The Ultimate Living court found that the plaintiff could not show the requisite bad faith intent because it required a showing that the defendant "learned of the Green Miracle mark before adopting the domain name, [which was] a proposition unsupported by any record evidence advanced by Ultimate Living." Id. (emphasis in original). Like the plaintiff in Ultimate Living, Wagner has proffered no evidence that creates a genuine dispute of fact as to whether eWeb had any specific knowledge of her prior use of the alleged mark before it registered the domain name. Moreover, in light of the commonness of the name "Linda Wagner" in the United States, there is no basis upon which to conclude that eWeb had constructive knowledge of the purported mark. Indeed, eWeb's president has provided an undisputed averment that eWeb assumed no specific individual would be able to claim trademark rights in the name and intentionally selected the domain name because it contained wholly generic terms. Phu Decl. 1 ¶¶ 7-9.

Similarly, in a Fourth Circuit case, Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d at 264, the court found that a business that registered vw.net was acting with bad faith

intent in part because in his deposition the owner of the business "reveal[ed] that when registering vw.net, he and [the co-owner] specifically acknowledged that vw.net might be confused with Volkswagen by some Internet users. They nevertheless decided to register the address for their own use, but left open the possibility of one day selling the site to Volkswagen 'for a lot of money.'" Id. at 269. In contrast, there is simply no information in the record to support an inference that eWeb had similar knowledge about the owner of <lindawagner.com>, plaintiff's business, or the possibility that some internet users could be confused when seeking her website.

The second portion of the fifth factor also weighs against a finding of bad faith intent because there is no indication from any of the evidence in the record that eWeb acted with "intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." Indeed, the page that linked to the domain name mentioned nothing about real estate or Linda Wagner's business, of which eWeb had no prior knowledge, nor did the site mention anything related to Tennessee. Accordingly, this factor weighs strongly against a finding of bad faith intent on the part of eWeb.

The sixth factor, whether eWeb offered to transfer, sell, or otherwise assign the domain name to Wagner without having previously used it or intending to use it in the future in connection with a bona fide offering of services, also weighs against a finding of bad faith intent. It is undisputed that eWeb never approached plaintiff to sell her the domain name. Instead, it was Wagner who approached eWeb with an offer to purchase the domain name on two separate occasions. Nevertheless, even if it had initiated communication, the legislative history of the ACPA specifically cautions that this factor "does not suggest that a court should consider the mere offer to sell a domain name to a mark owner or the failure to use a name in the bona fide

offering of goods or services as sufficient to indicate bad faith." H.R. Rep. No. 106-464, at 111

(1999). The Fourth Circuit's opinion in Virtual Works is also instructive on this factor. In Virtual

Works, the court explained that "[t]he ACPA was not enacted to put an end to the sale of all

domain names," but cautioned that the facts before it "involve[d] much more than a plain vanilla

offer to sell a domain name." 238 F.3d at 270. Indeed, in that case,

> Virtual Works told Volkswagen that vw.net would be sold to the highest bidder if
> Volkswagen did not make an offer within twenty-four hours. Virtual Works also stated
> that others would jump at the chance to own a valuable domain name like vw.net because
> Internet users would instinctively associate the site with Volkswagen. Virtual Works
> knew, both when it registered vw.net and when it offered to sell the site, that consumers
> would associate vw.net with Volkswagen. It sought to maximize the advantage of this
> association by threatening to auction off the site. And it hoped that in an effort to protect
> its mark, Volkswagen would respond with a hefty offer of its own.

Id. The record at hand simply does not support any analogous findings. Rather, unlike Virtual

Works, eWeb did not threaten to auction the domain name or set a time limit; when eWeb and

Wagner could not reach an agreement on price in 2012 and in 2015, eWeb simply walked away

from both interactions. In addition, given eWeb's undisputed description of its business model, it

is clear that when it bought the domain name its business plans included offering website

development and brand promotion services. Accordingly, this factor weighs against any finding

of bad faith intent.

As to the seventh factor, there is no suggestion that eWeb provided material or

misleading false contact information when applying for registration of the domain name at issue

or when registering other domain names. In fact, eWeb created a page resulting from the domain

name that explicitly provided a means to contact it and plaintiff has successfully contacted eWeb

on multiple occasions. With regard to the eighth factor, although eWeb has registered or acquired

multiple domain names, there is no evidence that it knew that any of them were "identical or

confusingly similar to marks of others." As such, both of these factors weigh against a finding of

bad faith intent.

Lastly, the ninth factor, which requires a determination of whether Wagner's purported mark was distinctive and famous, weighs strongly against a finding of bad faith intent on the part of eWeb. As discussed above, plaintiff has not provided any argument or evidence that her purported mark is "famous" in the statutory sense of the word. Similarly, "[p]roof of secondary meaning entails a rigorous evidentiary standard," U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 525 (4th Cir. 2002), which plaintiff does not appear to come close to satisfying. Indeed, in light of the reality that the domain name has been available for sale by eWeb since it was acquired in 2010 and has never been purchased by anyone else, strongly supports the conclusion that plaintiff's purported mark is neither distinctive nor famous like the "VW" mark in Vision Works. Accordingly, the undisputed evidence in the record establishes the conclusion that eWeb did not act with the bad faith intent to profit necessary to make out a claim under the ACPA, and defendant's Motion for Summary Judgment will be granted on this basis.

### III.   CONCLUSION

For the reasons stated above, defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment [Dkt. No. 36] will be GRANTED and plaintiff's Cross-Motion for Summary Judgment [Dkt. No. 41] will be DENIED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 15th day of August, 2016.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge

16